UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


SUMMIT EMERGENCY HOLDINGS,  )
LLC d/b/a SINAI URGENT CARE,  )
                                )
        Plaintiff,      )          CIVIL ACTION NO.
                                )
VS.                        )          3:17-CV-3080-G
                                )
MICHAEL J. CAMLINDE AND  )
ASSOCIATES, INC. d/b/a 360  )
MEDICAL BILLING SOLUTIONS,  )
                                )
        Defendant.    )


## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant, 360 Medical Billing Solutions, to compel arbitration and to stay this case pending arbitration. For the reasons discussed below, the motion is granted.

## I. BACKGROUND

### A. Factual Background

The plaintiff, Summit Emergency Holdings ("Summit"), is a limited liability company headquartered in Dallas County, Texas. Notice of Removal at 11 (docket entry 1). Summit operates a stand-alone urgent care medical clinic. *Id*. at 12. The defendant, Michael J. Camlinde and Associates, Inc. conducts its business under the

name 360 Medical Billing Solutions ("360 Medical").  *Id*. at 51.  360 Medical is a

Florida corporation with its principal place of business in Oklahoma City, Oklahoma.

*Id.* at 4.

On December 1, 2014, Summit entered into a Professional Service Agreement

("PSA") with 360 Medical whereby 360 Medical agreed, among other things, to:  (1)

be responsible for all billing and processing of claims on behalf of Summit; (2) file all

third-party claims; (3) mail patient statements on a weekly basis; (4) post all

contractual discounts and adjustments that are required; (5) maintain all accounts in

accordance with standard accounting principles and laws; and (6) provide monthly

reporting of accurate billing and collection reports.  *Id*. at 12-13.  In pertinent part,

the PSA included the following provisions:

> **13. <u>Governing Law and Venue</u>**.  This [a]greement shall
> be governed by, and constructed in accordance with, the
> internal laws of the State of Florida, without giving effect
> to its conflict of laws provisions.
>
> \* \* \*
>
> **16. <u>Dispute Resolution</u>**.  Any dispute arising under or
> relating to this [a]greement or any breach thereof shall be
> submitted to negotiation between designees of both
> parties.  Both parties agree to attempt in good faith to
> resolve any such dispute by negotiation and consensus.
> If a resolution to the conflict is not achieved through the
> good faith negotiations of the parties within ninety (90)
> days, any controversy, disagreement, or dispute arising out
> of, or relating to, this [a]greement, or breach thereof, shall
> be submitted to arbitration in Orlando, Florida in
> accordance with the rules of procedures of the National

> Health Lawyers Association Alternative Dispute Resolution
> Service.

*Id*. at 31-32.  Important to the instant motion is the fact that the National Health

Lawyers Association ("NHLA") consolidated with the American Academy of

Healthcare Attorneys ("AAHA") to form the NHLA/AAHA in 1997, which then

changed its name to the American Health Lawyer's Association ("AHLA") in 1998.

Reply Brief in Support of Motion to Compel Arbitration ("Reply") at 4 (docket entry

15).

In October of 2015, Summit began receiving complaints from its patients that

they were being overbilled, incorrectly billed, or were receiving final notices of

payments without having ever received a bill.  Notice of Removal at 13.  Concerned

about these complaints, Summit requested that 360 Medical investigate why

collections from patients had dropped while the number of patients seen had

increased.  *Id*.  In response, 360 Medical informed Summit that 360 Medical had

failed to generate any patient statements since Summit's opening in January 2015.

*Id*.  Shortly thereafter, an employee of 360 Medical informed Summit that its

account had fallen to the wayside because the account manager assigned to Summit

had prioritized managing the account of 360 Medical's other, much larger, client.  *Id*.

Consequently, 360 Medical failed to:  (1) timely file Summit's claims with medical

insurance providers; (2) timely finalize Summit's credentialing, and (3) correct or

remedy incorrectly filed claims.  *Id*. at 14-15.

As a result of 360 Medical's failures, Summit's asserts that its business had to absorb costs upwards of $964,000.00.  *Id*. at 16; Plaintiff's Response to Defendant's Motion to Compel Arbitration ("Response") at 6 (docket entry 13).  Ultimately, in February 2016, Summit terminated the PSA with 360 Medical.  Notice of Removal at 16.

## B.  Procedural History

This suit began on October 13, 2017, in the 134th Judicial District Court of Dallas County, Texas, when Summit filed its petition against 360 Medical alleging violations of the Texas Deceptive Trade Practices Act, negligence, negligent misrepresentation, breach of contract, and promissory estoppel arising out of 360 Medical's conduct related to the PSA.  Response at 7; Notice of Removal at 1-25.  Summit argued in its petition that, due to the egregious and knowing nature of 360 Medical's conduct, Summit is entitled to a reward of at least $964,611.92.  Notice of Removal at 18.  Instead of litigating in state court, on November 8, 360 Medical filed a notice of removal on the basis of diversity of citizenship, thereby removing this case in accordance with 28 U.S.C. § 1441 from the 134th Judicial District Court of Dallas County to this court.[1]  *Id*. at 1-6.

---

[1]     28 U.S.C. § 1441 provides, in pertinent part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place

(continued...)

On May 16, 2018, well after Summit had produced over 5449 pages of documents during discovery, 360 Medical informed Summit of its plans to file a motion to compel arbitration. Response at 8, 12; Appendix to Plaintiff's Response to Defendant's Motion to Compel Arbitration at 8, 207. Despite Summit's stated objections, 360 Medical filed its motion to compel arbitration on June 7, 2018. *Id*; *see* Motion to Compel Arbitration and Brief in Support (docket entry 12). In its brief, 360 Medical argues that this court should compel the parties to arbitrate because the parties entered into a valid arbitration agreement that encompasses Summit's claims. Motion to Compel Arbitration and Brief in Support at 3-7. Summit filed its response to 360 Medical's motion on June 28, 2018, arguing that because the arbitration clause contained within the PSA neither specifies a forum nor ascertainable set of rules, the clause is unenforceable. Response at 14-16.

Specifically, Summit asserts that because the arbitration clause requires arbitration under the rules of the NHLA, a now defunct organization, the arbitration clause cannot be enforced. *Id*. at 15-16. Furthermore, Summit avers that by engaging in discovery and waiting a number of months before filing for arbitration, 360 Medical has waived its right to arbitration. *Id*. at 17-20.

---

[1](...continued)
where such action is pending." Under 28 U.S.C. § 1332, a district court has original jurisdiction of all civil actions where the matter in controversy exceeds $75,000 and is between citizens of different states. *See* 28 U.S.C. § 1332.

## II.  ANALYSIS

### A.  Legal Standard

The Federal Arbitration Act ("FAA") applies to any written provision in a contract "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract. . . ."  9 U.S.C. § 2.  The Supreme Court has held that "involving" should be read expansively to apply to any transaction affecting interstate commerce.  *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 273-74 (1995).  In this case, the PSA at issue between Summit, a Texas limited liability company, and 360 Medical, a citizen of both Florida and Oklahoma, affects interstate commerce.

Section 2 of the FAA provides that agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3, 4)).

In considering whether a dispute is subject to binding arbitration, "the court engages in a two step process."  *Brendel v. Meyrowitz*, No 3:15-CV-1928-D, 2016 WL

302282, at \*3 (N.D. Tex. Jan. 25, 2016) *reconsideration denied*, No. 3:15-CV-1928-D, 2016 WL 1721312 (N.D. Tex. Apr. 29, 2016) (Fitzwater, J.).  The first step a court must take "is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985).  "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Brendel*, 2016 WL 302282 at \*3 (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)).  In determining whether the parties agreed to arbitrate the dispute, "courts apply the contract law of the particular state that governs the agreement." *Washington Mutual Finance Group, L.L.C. v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  In applying state law, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 476 (1989).

The second step requires the court to decide "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Mitsubishi Motors Corporation*, 473 U.S. at 628.  A court applies the contract law of the particular state that governs the agreement when making this determination.

*Brendel*, 2016 WL 302282 at *3 (citing *Iberia Credit Bureau, Inc. v. Cingular Wireless, LLC*, 379 F.3d 159, 166 (5th Cir. 2004)).

"The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence." *Grant v. Houser*, 469 Fed. Appx. 310, 315 (5th Cir. 2012). Due to the strong federal policy in favor of enforcing arbitration agreements, "a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Brendel*, 2016 WL 302282 at *3 (citing *Carter v. Countrywide Credit Industries.*, 362 F.2d 294, 297 (5th Cir. 2004)).

## B. Application

### 1. *Validity of the Agreement*

As a threshold matter, this court must decide which state's law governs the enforceability of the arbitration agreement. Summit contends that Florida or Texas law controls the PSA. *See* Response at 14-15. 360 Medical maintains that Florida law controls because of the PSA's choice-of-law provision. Motion to Compel Arbitration and Brief in Support at 3. It is well-established that a federal court sitting in diversity applies the choice of law rules of the state in which the court sits – here, Texas.[2] See *Klaxon Company v. Stentor Electric Manufacturing Company*, 313 U.S.

---

[2] There is no question that this court sits in diversity. 360 Medical is a citizen of both Florida and Oklahoma and Summit is a citizen of Texas.

487, 496 (1941). "Under the Texas rules, in those contract cases in which the parties have agreed to an enforceable choice of law clause, the law of the chosen state must be applied." *Brendel*, 2016 WL 302282 at \*4 (quoting *Resolution Trust Corporation v. Northpark Joint Venture*, 958 F.2d 1313, 1318 (5th Cir. 1992), *cert. denied*, *Dannis v. Resolution Trust Corporation*, 506 U.S. 1048 (1993)). Accordingly, because the PSA contains a Florida choice-of-law provision, this court must apply Florida law to decide whether the parties entered into an enforceable arbitration agreement.

Florida law provides that "[t]he issue of 'whether a valid written agreement to arbitrate exists' is controlled by principles of state contract law." *Shotts v. OP Winter Haven, Inc.*, 86 So. 3d 456, 464 (Fla. 2011). An enforceable contract, under Florida law, requires "an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." *Land Company of Osceola County, LLC v. Genesis Concepts, Inc.*, 169 So. 3d. 243, 247 (Fla. 4th DCA 2015) (quoting *West Construction, Inc. v. Florida Blacktop, Inc.*, 88 So. 3d. 301, 304 (Fla. 4th DCA 2012)). Here, the only element of contract formation at issue is whether the PSA's arbitration clause contains terms that are sufficiently specific so as to be enforceable. *See* Response at 14-16.

Specifically, Summit contends that because the PSA requires arbitration subject to the rules of the NHLA, a now defunct organization, the arbitration clause is an unenforceable nullity because it "does not specify a forum and does not specify

a set of rules which can be ascertained." Response at 14. Summit further contends that because the PSA lacks an ascertainable forum or set of rules, the arbitration clause is unconscionable. *Id*. at 15-16. Neither argument persuades this court.

In support of its argument, Summit cites two cases concerning arbitration before the Cheyenne River Sioux Tribe, asserting that the facts of this dispute are identical. *Id*. (citing *Jackson v. Payday Financial, LLC*, 764 F.3d 765 (7th Cir. 2014), *cert. denied*, *Western Sky Financial v. Jackson*, __ U.S. __, 135 S. Ct. 1894 (2015); *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346 (11th Cir. 2014), *cert. denied*, *Cashcall, Inc. v. Inetianbor*, __ U.S. __, 135 S. Ct. 1735 (2015)). In *Jackson*, the Seventh Circuit determined that the arbitration clause at issue was unenforceable and both procedurally and substantively unconscionable. *Jackson*, 764 F.3d at 774-779. There, the clause in question required disputes arising from the agreement to be resolved by arbitration "conducted by the Cheyenne River Sioux Tribe Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this [a]greement." *Id*. at 776. After reviewing the record, the Seventh Circuit determined that the Cheyenne River Sioux Tribe Nation had neither consumer dispute rules, nor procedures for selecting arbitrators or conducting arbitral proceedings. *Id*. at 778-79. Thus, the Seventh Circuit determined that the arbitration clause in question was procedurally and substantively unconscionable because "it was not possible for the [p]laintiffs to ascertain the dispute resolution processes and rules to which they were

agreeing" nor was there a prospect of "meaningful and fairly conducted arbitration." *Id*. at 778-79.

In *Inetianbor*, the Eleventh Circuit concluded that an arbitration clause requiring arbitration before the Cheyenne River Sioux Tribe was unenforceable due to the forum being unavailable. *Inetianbor*, 768 F.3d at 1353-54. There, the arbitration clause in question provided that all disputes would be resolved by arbitration, "which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this [a]greement." *Id*. at 1348. Because evidence demonstrated that the Cheyenne River Sioux Tribe neither conducted arbitration nor had existing consumer dispute resolution rules, the Eleventh Circuit concluded that the arbitration clause could not be enforced due to an unavailable arbitral forum. *Id*. at 1353-54.

Here, the facts of this dispute are dissimilar to those of both *Jackson* and *Inetianbor*. Unlike the arbitration clause at issue in *Jackson*, the arbitration clause contained within the PSA is governed by ascertainable rules. While it is certainly the case that the NHLA no longer exists and has merged with the AAHA to form the AHLA, this does not mean that it was impossible for Summit to "ascertain the dispute resolution processes and rules to which they were agreeing." See *Jackson*, 764 F.3d at 778. In *Jackson*, the arbitral rules flatly did not exist, and thus could not be ascertained. *Id*. Here, as correctly pointed out by 360 Medical, the NHLA's arbitral

rules not only exist, but are available for viewing on the AHLA's website, which also provides the AHLA's current rules and procedures for arbitration. *See* Reply Brief in Support of Motion to Compel Arbitration at 6; *see also* American Health Lawyers Association, *Rules of Procedure for Arbitration*, https://www.healthlawyers.org/dr/Pages /Arbitration-Rules.aspx (last visited on October 15, 2018). Simply put, because the NHLA's rules and procedures for arbitration are readily available and existed at the time the parties entered into the PSA, this court concludes that the PSA is unlike the unconscionable arbitration clause in *Jackson*, as the PSA provides for ascertainable arbitral rules and procedures.

Nor do the facts of this case lead this court to conclude that the PSA's arbitration clause provides for a nonexistent forum, as was the case in *Inetianbor*. In *Inetianbor*, the court concluded that there was no available arbitral forum because the Cheyenne River Sioux Tribe did not conduct arbitration and thus could not serve as a forum as per the parties' agreement. *Inetianbor*, 768 F.3d at 1354. Here, although the NHLA ceased to exist because it merged into the AHLA, because the PSA incorporated the NHLA's rules, the PSA's arbitration clause still provides for an appropriate forum. [3] Specifically, section 7.07 of the NHLA's rules provides:

_____

[3] Under Florida law, to incorporate the NHLA's rules by reference "there must be some expression in the incorporating document . . . of an intention to be bound by the collateral document . . . ." *Kantner v. Boutin*, 624 So. 2d 779, 781 (Fla. 4th DCA 1993). This court concludes that the PSA incorporated by reference the NHLA rules, since the PSA's arbitration clause provides an express intent that the

(continued...)

> If the parties have agreed to resolve a dispute under these
> [r]ules or the auspices of the [s]ervice and the [s]ervice is
> not operating at the time at which a party or parties wishes
> to submit the dispute to arbitration, the parties shall be
> deemed to have agreed that the dispute will be arbitrated
> in accordance with the Commercial Arbitration Rules of
> the American Arbitration Association modified, to the
> extent permitted thereby, by these [r]ules.

Exhibit A of Appendix in Support of Defendant's Reply at 15 (docket entry 16). Due

to this provision, the facts of this dispute are not like those of *Inetianbor*, as there

exists an available forum for Summit and 360 Medical to arbitrate their dispute – the

American Arbitration Association.[4]

Therefore, because this court finds Summit's arguments unpersuasive, this

court concludes that the PSA's arbitration clause is not unconscionable, and that it

contains sufficiently specific terms to be enforceable.[5] And, since the only element of

---

[3](...continued)
parties be bound by the NHLA rules, and is more than a mere reference. See
*Glasswall, LLC v. Monadnock Construction, Inc.*, 187 So. 3d. 248, 250 (Fla. 3rd DCA
2016) (finding that contract containing an arbitration clause to be administered by
the American Arbitration Association in accordance with its Construction Industry
Arbitration Rules effectively incorporated the Construction Industry Rules by
reference).

[4] This court does not agree with 360 Medical's assertion that the
procedural Rules of the NHLA and AHLA are sufficiently similar to warrant
submitting this dispute to arbitration under the AHLA's rules. The rules differ
substantively on a number of issues. *Compare* Exhibit A of Appendix in Support of
Defendant's Reply *with* Exhibit B of Appendix in Support of Defendant's Reply.

[5] This court need not address Florida contract law on whether the PSA's
(continued...)

contract formation at issue is the specificity of the PSA's terms, this court concludes that all elements of a valid contract under Florida law are satisfied, meaning that as between Summit and 360 Medical there exists a valid agreement to arbitrate.

### 2. *Scope of the Arbitration Agreement*

This court now considers whether the dispute in question falls within the scope of the arbitration agreement. Summit does not contend that this dispute falls outside the scope of the clause, which applies to "[a]ny dispute arising under or relating to this [a]greement or any breach thereof . . . ." Notice of Removal at 32. Because this arbitration clause uses 'any dispute' language, this court must conclude that it is a broad arbitration clause. *Hornbeck Offshore (1984) Corporation  v. Coastal Carriers Corporation*, 981 F.2d 752, 755 (5th Cir. 1993) ("We have held that arbitration clauses containing the 'any dispute' language, such as the one presently before us, are of the broad type."). "To avoid arbitration on the ground that [the plaintiff's] claims are not covered by a broad arbitration clause, [the plaintiff] must adduce 'forceful evidence' in support." *Brendel,* 2016 WL 302282 at *8 (citing *Rodriguez v. John Eagle Sport City Motors, Limited Liability Partnership*, No. 3:14-CV-

---

[5](...continued)
arbitration clause is unconscionable. Summit, in its briefing, only made the argument that the clause was unconscionable by comparing the facts of this dispute to that of *Inetianbor* and *Jackson*. Response at 15-16. Summit did not address whether the agreement would otherwise be unconscionable under Florida law. Consequently, this court will not alleviate Summit's burden of demonstrating unconscionability under Florida law by engaging in such an analysis.

0334-D, 2014 WL 2587599, at *3 (N.D. Tex. June 10, 2014) (Fitzwater, Chief J.)).

Here, Summit has produced no evidence. Therefore, this court concludes that the

dispute in question falls within the scope of the arbitration agreement.

### 3. *Legal Constraints*

The parties do not raise, and this court is not aware of, any legal constraints

external to the PSA. Therefore, this court need not address whether any constraints

foreclose arbitration of this dispute.

### 4. *Waiver*

Summit further contends that by engaging in discovery and  moving to compel

arbitration months after the case was filed 360 Medical waived its right to

arbitration. Response at 17-20. This court concludes that Summit has not carried its

burden of demonstrating waiver.

"Waiver will be found when the party seeking arbitration substantially invokes

the judicial process to the detriment or prejudice of the other party." *Republic

Insurance Company v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004)

(quoting *Subway Equipment Leasing Corporation v. Forte*, 169 F.3d 324, 326 (5th Cir.

1999)). To invoke the judicial process "the party must, at the very least, engage in

some overt act in court that evinces a desire to resolve the arbitrable dispute through

litigation rather than arbitration." *Id*. (quoting *Subway Equipment Leasing,* 169 F.3d at

329). Furthermore, when determining whether an arbitration agreement has been

waived, "prejudice . . . refers to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Id*. at 346 (quoting *Subway Equipment Leasing*, 169 F.3d at 327). Ultimately, however, "[t]here is a strong presumption against finding a waiver of arbitration, and the party claiming that the right to arbitrate has been waived bears a heavy burden." *Id.* at 344. And, any doubt about waiver "should be resolved in favor of arbitration." *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1158 (5th Cir. 1986) (citing *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*, 460 U.S. 1, 24-25 (1983)).

Here, Summit argues that 360 Medical has substantially invoked the judicial process by engaging in tactical gamesmanship to advance its position in this litigation. Response at 17-19. In particular, Summit asserts that 360 Medical substantially invoked the judicial process by: (1) moving to compel arbitration after Summit produced documents responsive to 360 Medical's discovery requests; (2) failing to mention or discuss arbitration when asked by this court what form of alternative dispute resolution was appropriate for the case; and (3) moving to compel arbitration too close to the November trial date originally requested by 360 Medical. *Id*. at 17-19. In support of its argument, Summit cites *Wynne v. Nexion Health at Flower Mound, Inc.*, 3:13-CV-2605-N, 2014 WL 11456586 (N. D. Tex. June 4, 2014)

(Godbey, J.), and argues that the facts of this dispute are analogous. Response at 17-18. This court disagrees with Summit's comparison.

In *Wynn*e, the court concluded that the defendant had substantially invoked the judicial process for a number of reasons, none of which apply to the facts of this dispute. *Wynne,* 2014 WL 11456586 at *1. For one, the defendant had filed its motion to compel arbitration too late, since it had filed the motion "only three months before the scheduled trial . . . and nine months after filing its answer." *Id.* Additionally, the court considered the fact that both parties had conducted discovery, which included designating experts and taking depositions. *Id.* Most importantly, however, the court reached its conclusion after determining that the defendant "used the litigation process in an attempt to dispose of the case by moving to strike two expert reports necessary to [the] [p]laintiff." *Id.* The court concluded that these facts, taken together, demonstrated the defendant's "desire to resolve the arbitrable dispute through litigation rather than arbitration." *Id.* (citing *Republic Insurance Company*, 383 F.3d at 344-45).

While it is true that 360 Medical's filed its motion over nine months after the litigation began, this does not mean that 360 Medical is similar to the defendant in *Wynne*. The defendant in *Wynne* waited until only three months remained before trial to file the motion to compel arbitration. *Wynne*, 2014 WL 11456586 at *1.

Unlike the defendant in *Wynne*, 360 Medical filed its motion to compel arbitration in June, 2018 – six months before the date this court set for the trial of this case. *See* Motion to Compel Arbitration at 1 (docket entry 12); Order Establishing Schedule and Certain Pretrial Requirements at 2 (docket entry 10).

Furthermore, in *Wynne* the defendant waited to file its motion until after it had undertaken substantial discovery, including "requests for production, interrogatories, initial disclosures, designation of experts, and two depositions." *Wynne*, 2014 WL 11456586 at *1. Here, while it is true the parties have engaged in some preliminary discovery by way of requests for production and initial disclosures, neither party has conducted depositions or designated experts. Reply at 9. In addition, the court in *Wynne* heavily relied on the fact that the defendant used the litigation process in a dispositive manner by moving to strike two export reports necessary to the plaintiff. *Wynne*, 2014 WL 11456586 at *1. Here, 360 Medical has not engaged in conduct designed to dispose of the dispute through litigation rather than arbitration.

Rather, 360 Medical's conduct consists of participating in minimal discovery during the ten months before it moved to compel arbitration. Reply at 9. The Fifth Circuit has made clear on multiple occasions, however, that a party must do more to substantially invoke the judicial process. See, *e.g.*, *Walker v. J.C. Bradford & Company*, 938 F.2d 575, 577 (5th Cir. 1991) (concluding party had neither substantially

invoked the judicial process nor waived arbitration where such party engaged in discovery and waited thirteen months after plaintiff filed suit to move to compel arbitration); *Tenneco Resins, Inc. v. Davy International, AG*, 770 F.2d 416, 420-21 (5th Cir. 1985) ("While it is true that Davy waited almost eight months before moving that the district court proceedings be stayed pending arbitration, and, in the meantime participated in discovery, this and other courts have allowed such actions as well as considerably more activity without finding that a party has waived a contractual right to arbitrate."); cf. *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1159 (5th Cir. 1986) (concluding defendant substantially invoked judicial process by undergoing extensive discovery and by filing motions to dismiss and motions for summary judgment, all before moving to compel arbitration). Therefore, this court concludes that 360 Medical has not substantially invoked the judicial process.

Nor does this court find that Summit has been prejudiced by 360 Medical's conduct. Summit maintains that it was prejudiced by 360 Medical's discovery requests because Summit, in response to these requests, surrendered over 5000 pages of documents containing information critical to its legal position. Response at 18. Summit further avers that requiring arbitration would prejudice it by depriving it of compulsory process to require the testimony of critical third-party witnesses. *Id*. This court disagrees.

First, the fact that Summit turned over critical evidence to 360 Medical during discovery does not establish prejudice. In *Tenneco Resins, Inc.* the Fifth Circuit determined that no prejudice resulted to a plaintiff under similar circumstances. *Tenneco Resins, Inc.*, 770 F.2d at 421. In *Tenneco*, the defendant did not move to compel arbitration until around eight months into litigation. *Id*. at 420. By that time, the defendant had participated in discovery by serving the plaintiff with interrogatories and a request for production of documents, which the plaintiff answered. *Id.* at 417. The *Tenneco* plaintiff argued that it had been prejudiced, since by engaging in discovery the defendant took advantage of discovery procedures not available in arbitration. *Id*. at 421. The Fifth Circuit rejected this argument, finding that "when only a minimal amount of discovery has been conducted . . . the court should not ordinarily infer waiver based upon prejudice. . . ." *Id*. Much like in *Tenneco*, here the parties have engaged in minimal discovery consisting of initial disclosures, interrogatories and requests for production. *See* Response at 8, 18. Consequently, this court concludes that Summit was not prejudiced as a result its disclosure of information during discovery.

Second, Summit's contention that it will be deprived of compulsory process to require the testimony of critical witnesses or to determine the whereabouts of these witnesses is unsupported. Summit has made no showing that the NHLA's rules would not permit an arbitrator to subpoena a relevant witnesses. In actuality, the

NHLA's pre-merger rules provide that "[a]n arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of a party or upon the arbitrator's own motion." Exhibit A of Appendix in Support of Defendant's Reply at 9. More importantly, the commercial arbitration rules of the American Arbitration Association, which this court found earlier in this opinion to be the default arbitral forum of this dispute, provide that "[a]n arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently."[6] American Arbitration Association, *Commercial Arbitration Rules and Mediation Procedure*, at 23 *available at* https://www.adr.org/sites/default/files/Commecial%20Rules.pdf. Additionally, 360 Medical has stated in its reply that it would exercise its power to produce relevant witnesses that it can for deposition, and that it would not oppose the subpoena of relevant witnesses over which it has no control. *See* Reply at 10.

All in all, because this court concludes that 360 Medical did not substantially invoke the judicial process and that Summit has not been prejudiced by 360 Medical's conduct in this litigation, this court determines that 360 Medical did not waive its right to arbitration. Summit's claim of waiver fails.

---

[6] This court takes judicial notice of the American Arbitration Association's commercial arbitration rules. See *Century Satellite, Inc. v. Echostar Satellite, L.L.C.*, 395 F. Supp. 2d 487, 493 (S.D. Tex. June 23, 2005) (taking judicial notice of the American Arbitration Association's commercial arbitration rules).

### III.  CONCLUSION

For the reasons stated above, the defendant's motion is **GRANTED**.  The FAA directs federal district courts to stay proceedings until the arbitration process is completed.  *See* 9 U.S.C. § 3.  Accordingly, the parties shall proceed to arbitration for resolution of their dispute, and this action is **STAYED**, pending the outcome of the arbitration proceeding.

**SO ORDERED.**

October 30, 2018.


_____
**A. JOE FISH**
**Senior United States District Judge**